AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
## for the
### Middle District of Florida

| | |
|---|---|
| United States of America<br>v.<br><br>JORDI MANUEL ESPINOZA PACHECO, and<br>WILFREDO ALFARO ACOSTA<br><br>_____<br>*Defendant(s)* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No. 8:15MJ1383 MAP

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ June 4, 2015 _____ in the county of _____ MDFL _____ in the _____ Middle _____ District of _____ Florida _____, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 46 U.S.C. § 70503(a)<br>46 U.S.C. § 70506(a) and (b)<br>21 U.S.C. § 960(b)(1)(B) | Conspiracy to possess with intent to distribute five (5) kilograms or more of cocaine, a Schedule II controlled substance, while on board a vessel subject to the jurisdiction of the United States. |

This criminal complaint is based on these facts:

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Scott Schooner, Special Agent
_____
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____ 6/15/15 _____

_____
*Judge's signature*

City and state: _____ Tampa, Florida _____

MARK A. PIZZO, U.S. Magistrate Judge
_____
*Printed name and title*

## AFFIDAVIT of COMPLAINT

I, Scott Schoonover, Special Agent (SA), with Drug Enforcement Administration (DEA), Tampa, Florida, being duly sworn, hereby state:

1.      I have been employed as a Special Agent (SA) with the Drug Enforcement Administration (DEA), since September of 1997. Prior to this, your affiant was employed for nine years as a Trooper with the South Carolina Highway Patrol, Department of Public Safety. I have participated in and received training with respect to the investigations of organizations and individuals involved in illegal drug trafficking activities and money laundering including those involved in the maritime smuggling of shipments of cocaine in the Caribbean Sea and elsewhere.

2.      This affidavit is submitted in support of a criminal complaint and the issuance of arrest warrants for the following individuals:

Jordi Manuel Espinoza Pacheco

Wilfredo Alfaro Acosta

who knowingly and willfully conspired, with each other and other persons, to possess with the intent to distribute and five (5) kilograms or more of cocaine, a Schedule II controlled substance, while on board a vessel subject to the jurisdiction of the United States, in violation of Title 46, United States Code, Sections 70503 (a)(1), 70506 (a), and 70506(b); and Title 21 United States Code, Section 960(b)(1)(B).

3.     The information contained herein is either personally known to me or has been provided to me by other law enforcement officer's with whom your Affiant has worked on this investigation. This affidavit is submitted for the limited purpose of establishing probable cause for the criminal charges set forth herein and, therefore, does not contain each and every fact known to me or other law enforcement agents concerning this investigation.

4.     In the course of my duties, I sometimes receive reports from U.S. Coast Guard (USCG) law enforcement personnel related to at-sea interdictions of vessels suspected of transporting narcotics or committing other violations of federal law.   I gained the following information from reviewing reports of law enforcement personnel from United States Coast Guard Cutter Vigilant (USCGC Vigilant).

5.     The USCG has the authority under 14 U.S.C. § 89 to make inquiries, examinations, inspections, searches, seizures, and arrests upon the high seas and waters over which the United States has jurisdiction, in order to enforce federal laws

6.     On June 4, 2015, while on routine patrol in the western Caribbean Sea, USCGC Vigilant spotted the German flagged sailing vessel (S/V) Corona III at geo coordinates 10-35.5N 081-36.2W, approximately ninety (90) nautical miles ENE of Puerto Limon, Costa Rica, in international waters.  The USCGC Vigilant sent a boarding crew to conduct Right of Approach (ROA) questioning. During the ROA, the crew of the S/V Corona III stated that they were transporting

2

the S/V Corona III from Puerto Bello, Panama to Roatan, Honduras, for the owner who was currently in Roatan, Honduras. The boarding team noticed rub marks along the port side of the vessel.

7.      Based on the vessel flying a German flag, the USCG contacted the government of Germany in an attempt to confirm or deny the claim of German nationality for the vessel. The German government confirmed nationality and authorized USCGC Vigilant to board and search the S/V Corona III.

8.      While the USCG was alongside the S/V Corona III, a crew member spontaneously cut into the dingy that was on board the S/V Corona III and displayed a brick of cocaine to the boarding officers and stated that the vessel contained cocaine.   Upon further search of the vessel, the boarding team eventually located and seized approximately 233 bricks of cocaine located in the dingy on the deck of the S/V Corona III.  A NIK test of the suspected cocaine was completed by the United States Coast Guard.  The substance tested positive for cocaine.  The two Honduran crew members were detained and placed on the USCGC Vigilant and the S/V Corona III was towed. During the night the tow line attached to the S/V Corona III became unstable due to rough seas, causing damage to the sailing vessel.  The sailing vessel had to be detached from the USCGC Vigilant so not to cause more damage to either vessel. Afterwards, a crew from the USCGC Vigilant boarded the S/V Corona III to assess any damage and discovered a space in the cockpit of the S/V Corona III that contained approximately 114 packages of cocaine, which was not

discovered on the initial search, bringing the total number of packages of cocaine seized to 347.

9.  Based on a conservative, wholesale value of thirty thousand dollars ($30,000.00) per kilogram of cocaine in the United States, the value of the cocaine being transported by the S/V Corona III is estimated to be worth no less than ten million dollars ($10,000,000.00).  Based on my training and experience, persons involved in the maritime smuggling of large shipments of cocaine (as in the case of the sailing vessel described above), are trusted members of a drug trafficking organization responsible for transporting the cocaine and knowingly and willingly participate in such drug smuggling venture.  Based on my training and experience, drugs of this quantity and value are intended for large scale distribution.  Furthermore, in my training and experience, drug smugglers would not allow an unknowing outsider on board a vessel filled with approximately ten million ($10,000,000.00) worth of contraband.

10.  On or about June 12, 2015, the Government of Germany consented to the exercise of jurisdiction by the United States with respect to the S/V Corona III, its crew and the contraband seized from the vessel.  Therefore, the S/V Corona III and all persons on board are subject to the jurisdiction of the United States.  On June 15, 2015, the persons on board the S/V Corona III, as listed herein, were brought to the United States with the first point of entry being at a place in the Middle District of Florida.

Affiant declares under penalty of perjury that the foregoing is true and correct.

Scott Schoonover
Special Agent
Drug Enforcement Administration

Sworn to and subscribed before me

This 15th day of June, 2015.

The Honorable Mark A. Pizzo
United States Magistrate Judge

5